MORRISON ET AL., APPELLANTS, *v.* CORNELL, ADMR., BUREAU OF UNEMPLOYMENT COMPENSATION, APPELLEE.

(No. 5340—Decided February 9, 1956.)

*Messrs. Vorys, Sater, Seymour & Pease, Mr. James A. Gorrell, Mr. Edgar A. Strause* and *Messrs. Zinn, Tate & Cultice,* for appellants.

*Mr. C. William O'Neill,* attorney general, and *Mr. John W. Hardwick,* for appellee.

MILLER, P. J. This is an appeal on questions of law from a judgment of the Common Pleas Court affirming an order of the Administrator of the Bureau of Unemployment Compensation fixing the contribution rates of the Morrison Motor Company and the Muskingum Motor Company, two corporations located in the city of Zanesville, Ohio.

The record discloses that from the time the Unemployment Compensation Act became effective, and until March 31, 1943, two corporations, the Morrison Motor Company and the Muskingum Motor Company, were in business in Zanesville, Ohio. Each company operated a separate general automobile sales and service agency. The principal officers and shareholders of each corporation were Charles W. Morrison, who was president, and Robert B. Morrison, his son, who was secretary and treasurer. Each of the parties just named owned 124 shares of stock of each company, and Clara B. Morrison, wife of Charles W. Morrison, owned two shares of stock of each company. Each company handled a different make of new automobile and each was competitive with the other. The two corporations had separate places of business, separate books and accounting records, and different personnel. Each corporation as an employer filed a separate report with the Bureau of Unemployment Compensation based upon its payroll. Shortly prior to the dissolution of the corporations on March 31, 1943, each had a merit rating of 0.5 per cent.

When the Morrison Motor Company was dissolved on March 31, 1943, its assets were transferred and assigned to Charles W. Morrison and Robert B. Morrison, partners doing business as Morrison Motor Company. This partnership continued to operate the business formerly owned by the corporation in precisely the same manner as had been the situation in

the past. The physical location of the automobile sales and service agency was exactly the same as theretofore, and separate books and accounting records were kept as theretofore.

When the Muskingum Motor Company was dissolved on March 31, 1943, its assets were transferred and assigned to Charles W. Morrison and Robert B. Morrison, partners doing business as Muskingum Motor Company. In this instance the former business of the Muskingum Motor Company was conducted as in the past. The physical location of the automobile sales and service agency was exactly the same as theretofore, and separate books and accounting records were kept as theretofore. There were two separate and distinct businesses at all times, one known as Morrison Motor Company, the other known as Muskingum Motor Company. The two businesses were just as separate and distinct in every respect as was the situation of the two corporations. There were two partnership agreements.

After the two corporations were dissolved on March 31, 1943, and the two partnerships immediately came into existence, each partnership sought to file a separate report with the Bureau of Unemploypment Compensation with respect to its employees but was not permitted to do so, and the two partnerships acquiesced in the determination of the bureau that a single report be filed.

The two partnerships continued in business as we have noted, until March 3, 1950, on which date Charles W. Morrison executed a bill of sale to Robert B. Morrison whereby he conveyed to the latter all his interest in and to Morrison Motor Company, theretofore a partnership. On the same date, Charles W. Morrison also executed another bill of sale to Robert B. Morrison, whereby he transferred and delivered to the latter all his interest in and to Muskingum Motor Company, also theretofore a partnership.

On March 14, 1950, Robert B. Morrison, as the sole owner of the assets of the former partnership known as Morrison Motor Company, executed a bill of sale whereby he transferred and delivered to a new corporation known as The Morrison Motor Company all the assets of the former partnership in exchange for 250 shares of no par common stock of the corporation. On the same date, Robert B. Morrison executed another bill of sale

whereby he transferred and delivered to the newly created The Muskingum Motor Company all the assets of the former partnership known as Muskingum Motor Company in exchange for 250 shares of no par common stock of that corporation.

The two newly formed corporations each actually commenced operations as such on April 1, 1950, as of which date the bureau gave each corporation a number and each corporation was required to file separate wage reports. The bureau, however, refused to permit each corporation to continue under the merit rating of 0.5 per cent that existed in the instance of the two partnerships. Therefore, a new rating of 2.7 per cent was assigned to each corporation.

From this latter order an appeal was perfected to the Common Pleas Court, which affirmed the order.

At the time of the last transfers, subdivision (c) (1) (D) of Section 1345-4, General Code, provided in part as follows:

"If an employer shall transfer his business or shall otherwise reorganize such business, the successor in interest is hereby required to assume the resources and liabilities of such employer's account, and to continue the payment of all contributions due under the Unemployment Compensation Act."

The first question for our determination is which employment unit or units transferred the business to the two new corporations? Was it Robert B. Morrison, sole owner of the business for a period of 11 days, or was it in reality the two partnerships? The record reveals that, since the manufacturers of the automobiles distributed by the Morrisons objected to a single dealer handling competing makes of cars, it was decided to incorporate the two businesses. It further appears that the transfer from Charles W. Morrison to Robert B. Morrison was only a procedural step in accomplishing this objective.

We are, therefore, of the opinion that, looking to substance rather than form, the employing units making the transfer to the two corporations were as a matter of fact the two prior partnerships.

The question next presented is whether each partnership was an employing unit prior to the transfer of the property to the new corporation. In the case of *Church Budget Envelope Co.* v. *Cornell, Admr.* (decided by this court on October 11, 1955,

being case No. 5229 and not reported at this time), we held in a similar factual situation that two partnerships composed of the same individuals and operating two separate and distinct business enterprises were separate employing units under the provisions of the act. For the reasons stated in that case, we hold that the partnerships in this case were separate employing units prior to the transfer to the two new corporations. The fact that the bureau treated them as only one employer cannot estop them from asserting the rights to which they were lawfully entitled. Since the entire business of each partnership was transferred to a separate corporation, we hold that the successor corporations are entitled to the same merit rating as their predecessors. It appears that the Common Pleas Court based its decision upon the pronouncement made by this court in the case of *Eiber Realty Co.* v. *Dunifon, Admr.*, 84 Ohio App., 532, 82 N. E. (2d), 565, which, we think, presented a different state of facts. In the cited case there was an individual employer who operated two separate businesses. There was there only one employing unit but here we have two, to wit, the two partnerships.

We hold that the order of the administrator is contrary to law; hence, the judgment is reversed and the cause remanded to the Bureau of Unemployment Compensation for further proceedings in accordance with the judgment of this court.

*Judgment reversed.*

HORNBECK and FESS, JJ., concur.

FESS, J., of the Sixth Appellate District, sitting by designation in the Second Appellate District.